Filed 2/25/25  P. v. Espinoza CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS ESPINOZA,<br><br>    Defendant and Appellant. | B337240<br><br>(Los Angeles County<br>Super. Ct. No. BA172626) |

APPEAL from an order of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Jesus Espinoza appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6[1] (former § 1170.95).[2] Because defendant is ineligible for section 1172.6 relief as a matter of law, we affirm.

## BACKGROUND

I.   Trials, Conviction, and Sentencing

In 1998, an information was filed charging defendant and his brother, Samuel Espinoza (Samuel),[3] with murder.  (§ 187, subd. (a).)  The information also contained multiple allegations about the codefendants' possession and use of firearms. (§ 12022.53, subds. (a)–(d).)

In 1999, a jury convicted both defendant and Samuel of second degree murder.  On appeal, we overturned the convictions. (*People v. Espinoza* (Jan. 28, 2002, B139257) [nonpub. opn.] (*Espinoza I.*).)

Defendant and Samuel were retried in 2002.  At the close of that trial, the trial court instructed the jury on murder liability, including that a second degree murder conviction required either (1) "inten[t] unlawfully to kill a human being" (express malice) or (2) "an intentional act[,]" resulting in death, "the natural consequences of [which] are dangerous to human life" and which

---

[1]    All further references are to the Penal Code unless otherwise indicated.

[2]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.) For simplicity, we refer to the section by its new numbering.

[3]    Because defendant and Samuel share the same last name, we refer to Samuel by his first name to avoid any confusion.

2

"was deliberately performed with knowledge of the danger to and with conscious disregard for human life" (implied malice). (See CALJIC Nos. 8.30, 8.32.)

The jury was not instructed on the felony murder or natural and probable consequences doctrines. It was instructed on aiding and abetting theory liability. Specifically, the trial court explained that "[a] person aids and abets the commission of a crime when he, with knowledge of the unlawful purpose of the perpetrator, and with the intent or purpose of committing or encouraging or facilitating the commission of the crime[,] . . . by act or advice aids, promotes, encourages or instigates the commission of the crime." (See CALJIC No. 3.01.) Additionally, "[p]ersons who are involved in committing a crime[,]" including "those who aid and abet the commission of the crime[,]" are "referred to as principals in that crime. Each principal, regardless of the extent or manner of participation[,] is equally guilty." (See CALJIC No. 3.00.)

Using these instructions, the jury again convicted both defendant and Samuel of second degree murder. It found true the allegation that defendant personally used a firearm (§ 12022.53, subd. (b)); Samuel was found to have personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).

The trial court sentenced defendant to an aggregate term of 25 years to life. On direct appeal, we remanded to correct technical errors in defendant's sentence; otherwise, we affirmed the judgment. (*People v. Espinoza* (Sept. 23, 2003, B160042) [nonpub. opn.] (*Espinoza II*).)

3

II.     Resentencing Petition and Appeal

In July 2022, defendant filed a petition for resentencing under section 1172.6.  The prosecution opposed the petition, attaching, among other exhibits, a copy of the jury instructions given at defendant's second trial.  Defendant's appointed counsel filed a written response.[4]

In March 2024, the trial court held a hearing to determine whether defendant's petition established a prima facie case for resentencing relief.  After entertaining argument from both sides, the trial court denied defendant's petition.  The court found that "as a matter of law . . . defendant is ineligible for relief because no felony murder, no natural [and] probable consequence[s] nor any other theory was advanced where malice is imputed.  [¶]  . . . [Defendant] could be convicted under . . . current law."  The court explained that its decision did "not rely[] on the facts.  I'm relying solely on the [jury] instructions."

Defendant timely appealed.

**DISCUSSION**

I.     General Legal Principles

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  Among other things, the bill

---

[4]     Defendant also filed a supplemental brief based on newly decided appellate authority; the prosecution filed an answer and supplemental reply.

4

amended section 188 to require that, when the felony murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

"Section 1172.6 provides a mechanism whereby people 'who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[ ] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court.' [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 382.)

In order to obtain resentencing relief, a defendant convicted of murder must first allege that an information was filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule, the natural and probable consequences doctrine, or any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).) The defendant must also allege that he was convicted of murder (§ 1172.6, subd. (a)(2)), but that he could not now be convicted "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

Upon the filing of a properly pleaded petition for resentencing, the trial court must conduct a prima facie analysis to determine the defendant's eligibility for relief. (§ 1172.6, subds. (b)(3) & (c); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 960 (*Lewis*); *People v. Strong* (2022) 13 Cal.5th 698, 708.) "[T]he prima facie inquiry . . . is limited. . . . '"[T]he court takes [a defendant]'s factual allegations as true and makes a preliminary assessment regarding whether the [defendant] would be entitled

5

to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause"'"" and set the matter for an evidentiary hearing.  (*Lewis*, *supra*, at p. 971.)

In making its assessment, the trial court may consider the defendant's record of conviction.  (*Lewis*, *supra*, 11 Cal.5th at pp. 970–971.)  As our Supreme Court explained in *Lewis*, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, at p. 971.)  However, "the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Id.* at p. 976; *People v. Flores* (2022) 76 Cal.App.5th 974, 991.)

II.    Standard of Review

We review de novo the trial court's denial of a section 1172.6 petition at the prima facie stage.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 545 (*Coley*).)

III.    Analysis

A.    *The record of conviction conclusively establishes that defendant could still be convicted as an aider and abettor of second degree murder*

Defendant argues that his petition merits an evidentiary hearing because the record shows that his murder conviction could have been secured under a now invalid theory of liability. We disagree.

The record of conviction conclusively establishes that defendant was convicted of second degree murder as an aider and abettor; although the jury found that both defendant and Samuel personally used a firearm in the commission of the murder, the jury found that only Samuel "personally and intentionally

6

discharged a firearm [causing death[,]]" indicating that defendant was convicted as an aider and abettor rather than as the actual killer. And it is well settled that direct aiding and abetting remains a viable theory of murder liability, "because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848, superseded by statute on another ground; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*) [an "aider and abettor must know and share the murderous intent of the actual perpetrator"].)

Moreover, the jury that convicted defendant was not instructed on felony murder, the natural and probable consequences doctrine, or any theory of liability relying on imputed malice. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205 [a petitioner is ineligible for section 1172.6 relief as a matter of law if the jury instructions show that jurors were not instructed on any theory of liability for murder that allowed malice to be imputed to the defendant].)

B.     *Defendant's counterarguments*

Defendant concedes that his jury was not directly instructed on a theory of imputed malice murder liability. However, he contends that three of the standard jury instructions given at his trial created ambiguities that effectively allowed the jury to improperly impute Samuel's implied malice to defendant.[5]

Defendant identifies what boil down to two instructional errors. First, he asserts that, when combined with the

---

[5]     The jury's verdict did not specify whether it found defendant and Samuel guilty of express or implied malice murder. We assume arguendo that defendant was convicted of aiding and abetting implied malice murder.

7

instruction on implied malice murder (CALJIC No. 8.31), the standard instruction on aiding and abetting liability (CALJIC No. 3.01) could have allowed the jury to convict him of second degree murder without finding that he shared the perpetrator's intent (i.e., his knowledge of the danger posed by his actions and his conscious disregard for human life).[6] Second, he suggests that the language of CALJIC No. 3.00, which instructs that "[e]ach principal, regardless of the extent or manner of participation is equally guilty[,]" also could have enticed the jury into finding him guilty simply because they found his codefendant guilty.

Defendant urges us to follow *People v. Langi* (2022) 73 Cal.App.5th 972, 982–984 (*Langi*), which held that summary denial of a section 1172.6 petition should be reversed where the record showed that a defendant was convicted as an aider and

---

[6] Defendant cites several cases for the proposition that these instructions could have confused the jury. (See *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1265 (*Maldonado*) [standard aiding and abetting instruction "was 'not tailored for' aiding and abetting an implied malice murder" because "while [the instruction] refers to an intent to aid and abet a 'crime,' the aider and abettor in fact needs to 'intend the commission of the perpetrator's act, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life'"]; *People v. Powell* (2021) 63 Cal.App.5th 689, 714 [same]; cf. *People v. Reyes* (2023) 14 Cal.5th 981, 991–992 [in relying solely on an implied murder liability instruction (CALCRIM No. 520), a reviewing court did not account for the specific intent elements needed to convict a defendant for aiding and abetting implied malice murder].)

8

abettor of implied malice murder using the standard jury instructions.

However, we are not convinced that *Langi* should apply in defendant's case. Numerous cases decided after *Langi* have held that "in focusing exclusively on" whether the jury instructions "created, in effect, an 'other theory' of imputed malice within the meaning of section 1172.6[,]" subdivision (a)(1) (*People v. Burns* (2023) 95 Cal.App.5th 862, 867 (*Burns*)), a defendant risks ignoring the third element needed to establish a prima facie case for relief, namely, that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)).[7]

"As numerous courts have recognized, the petition process created by [section 1172.6] was designed to permit the resentencing of defendants who were properly convicted under the law that applied at the time, but 'could no longer be convicted of murder' because of recent legislative changes. [Citations.] A petition thus supplements a defendant's traditional direct appeal by providing an opportunity to make arguments that did not exist at the time of the appeal, but have arisen since 2019 as a result of recent statutory amendments." (*Burns*, *supra*, 95 Cal.App.5th at p. 867.)

Defendant argues that both instructional errors he identifies—specifically, (1) the imprecise overlay of CALJIC Nos. 3.01 and 8.31 and (2) the "equally guilty" language in CALJIC No. 3.00—could have allowed the jury to conclude that it could impute Samuel's implied malice onto defendant, even

---

[7] Neither *Langi*, *supra*, 73 Cal.App.5th 972, nor *Maldonado*, *supra*, 87 Cal.App.5th 1257, address this issue. (*Burns*, *supra*, 95 Cal.App.5th at p. 868, fn. 7.)

though the law then (and now) required it to determine that defendant himself acted with implied malice. (See, e.g., *McCoy*, *supra*, 25 Cal.4th at p. 1118.) In other words, the alleged error is that the instructions "may have misled the jury as to what was *then* required to convict" defendant. (*Burns*, *supra*, 95 Cal.App.5th at p. 868 [italics in original].) Such error "has nothing to do with the legislative changes to California's murder law effected by Senate Bill No. 1437[,]" since defendant could have raised the error directly on appeal from his judgment of conviction.[8] (*Burns*, *supra*, at p. 867; see also *People v. Flores* (2023) 96 Cal.App.5th 1164, 1173–1174; *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935.)

Defendant raises three final counterarguments against this conclusion. First, he urges that *Burns*, *Flores*, and *Berry-Vierwinden* should not be applied here. However, defendant fails to adequately distinguish these cases. As to the error arising from CALJIC No. 3.00, defendant argues that his petition "does not raise a claim which could have been raised on his direct appeal . . . since . . . [the appeal] preceded" the cases that he contends were the first to find that the instruction's "equally guilty" language could be misinterpreted to convict an accomplice without a proper intent finding (e.g., *People v. Samaniego* (2009)

---

[8] In his second direct appeal, defendant did raise several instructional errors, including that the trial court incorrectly instructed the jury on the intent requirement for the lesser included offense of involuntary manslaughter. (*Espinoza II*, *supra*, B160042.) He did not argue that the instructions permitted the jury to misconstrue the intent required for aiding and abetting liability. (*Ibid.*)

10

172 Cal.App.4th 1148 (*Samaniego*) & *People v. Nero* (2010) 181 Cal.App.4th 504 (*Nero*)).[9]

But *Samaniego* and *Nero* did not originate the alleged error; they simply applied a legal principle that had already been established in 2001 by *McCoy, supra,* 25 Cal.4th 1111. (*Burns, supra*, 95 Cal.App.5th at p. 868 ["The Supreme Court's *McCoy* decision, as explained and developed in *Samaniego* and *Nero*, made clear that the direct perpetrator's mental state could *not* be imputed to an aider and abettor, whose mental state had to be independently evaluated"].) Because the alleged error stems from a legal principle that was in effect at the time of defendant's trial and direct appeal, we agree with *Burns* and its progeny that defendant could have raised the error prior to the enactment of Senate Bill No. 1437.

<u>Second</u>, defendant argues that while "none of the instructions complained [of] were prohibited at the time of [his] trials[,] . . . they would not pass muster under current law." Assuming arguendo that he is correct, that still does not establish that *the reason* those instructions no longer pass muster is "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

As explained above, defendant complains that the alleged instructional errors "may have misled the jury as to what was *then* required to convict" defendant, although he never raised this claim on direct appeal. (*Burns, supra*, 95 Cal.App.5th at p. 868 [italics in original].) "[T]he subsequent petition process created by the Legislature when it enacted Senate Bill No. 1437 did

---

[9]    Defendant makes no similar claim to the alleged error arising from CALJIC Nos. 3.01 and 8.31.

nothing to change the applicable law so as to resurrect an argument [defendant] had already abandoned."  (*Ibid*.)

Third, defendant insists that he need not "prove[] at the prima facie stage that he could not under any circumstances now be convicted of murder under current law[,]" but "must simply show that the record of his conviction, taken as a whole, does *not conclusively establish his ineligibility* for resentencing relief in order to proceed to [an] evidentiary" hearing.

Defendant correctly states his burden at the prima facie hearing.  However, on appeal, appellant must comply with "'[p]erhaps the most fundamental rule of appellate law,'" namely, "'that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.'" (*People v. Gonzalez* (2021) 12 Cal.5th 367, 410.)  To establish that the trial court erred in denying his section 1172.6 petition at the prima facie stage, defendant must affirmatively demonstrate that his petition credibly alleged all three of the eligibility factors enumerated in that statute.

On appeal, defendant has fallen into the pitfall warned of in *Burns*, *supra*, 95 Cal.App.5th at p. 867:  He "ignores the fact that he was entitled to an evidentiary hearing *only* if he made a prima facie showing of all three conditions listed in subdivision (a) of" section 1172.6.  By boiling the entire question on appeal down to "whether the instruction's delivered to [his] jury, taken as a whole, *could have caused the jury to impute implied malice* to" him, defendant fails to demonstrate that he could no longer be convicted of murder "because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)).

We thus conclude that the trial court correctly denied defendant's section 1172.6 petition because he failed to make a prima facie showing of eligibility for relief.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ